Affirmed and Opinion Filed April 30, 1997



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-95-01569-CV

### C & A INVESTMENTS, INC., Appellant

### V.

### BONNET RESOURCES CORP. and BANK ONE, TEXAS, N.A., Appellees

On Appeal from the 44th District Court
Dallas County, Texas
Trial Court Cause No. 94-10887-B

# OPINION

Before Justices Chapman, Morris, and Hankinson
Opinion By Justice Hankinson

C & A Investments is a sophisticated purchaser of real estate assets. It contracted to purchase a loan from Bank One. Bonnet Resources Corporation acted as Bank One's disclosed agent handling this sale. Relying on one statement included in a bid document and several post-contract statements by Bonnet's vice-president, C & A claims that Bank One contracted to deliver a "performing" loan but did not. In this case, we must decide whether C & A may rely on those statements to prove that Bank One breached the contract and

committed fraud. The trial court determined it could not and granted summary judgment. Because C & A knew statements about the loan's value might be inaccurate and promised it would independently evaluate the loan's value without relying on any information provided by Bank One and Bonnet, we agree with the trial court and affirm.

## BACKGROUND

Bank One acquired a portfolio of commercial real estate loans from the Federal Deposit Insurance Corporation as receiver for certain MBanks. In April 1994, Bonnet, as Bank One's agent, began soliciting bids on loan packages from this portfolio. John Harris, one of Bonnet's assistant vice-presidents, oversaw the loan sale. Initially, Harris sent to all prospective bidders, including C & A, certain bid documents: a Purchaser Eligibility Certificate, a Bidder Qualification Certificate, a Confidentiality Agreement, an Invitation to Bid and Instructions and Conditions of Bid, a Schedule of Loans, a Bid Form, and a Loan Sale Agreement.

C & A regularly bids on, and purchases, loans like those offered for sale by Bank One and has bid on more than one thousand loans. After receiving the bid documents from Harris, C & A entered the bid process. According to C & A, the Schedule of Loans it received from Harris "expressly represented that [Loan E was] 'performing'." Relying on this representation, and before doing any due diligence, C & A submitted an irrevocable bid for Loan E that Bank One accepted.

C & A and Bank One executed an agreement entitled "Loan Sale Agreement" in which C & A agreed to purchase Loan E. This agreement obligated C & A to tender

earnest money equal to the lesser of one percent of the bid or $100,000. C & A made the required payment. C & A and Bank One then amended the Loan Sale Agreement. C & A tendered an additional $26,578 in earnest money pursuant to this amendment.

After C & A signed the Loan Sale Agreement and the first amendment, Dave Krunic (C & A's vice-president) performed due diligence on Loan E at Bonnet's Dallas office. He met with Harris on June 16, 1994 and asked Harris whether Loan E was in default. Harris told Krunic that Loan E was current as of June 16, 1994. Contrary to Harris's comment, however, the June 1, 1994 loan payment had not been made. No later payments were made either.

One day before closing, Krunic contacted Harris and requested the closing date be extended because C & A had not yet obtained financing. Responding to Krunic's inquiry at a meeting attended by Krunic, Harris, and Harris's supervisor David Wiley, Harris again said that Loan E "remained current." C & A and Bank One then amended the Loan Sale Agreement a second time, extending the closing date, and C & A tendered an additional $26,578 in earnest money.

Yet again, on the day before the scheduled closing, C & A contacted Harris to extend the closing date. After another meeting between the parties' representatives, Bank One and C & A amended the Loan Sale Agreement a third time, extending the closing date and requiring an additional $46,844 in earnest money. Again, C & A paid the additional earnest money.

Krunic later contacted Harris to arrange closing. Krunic claims that only then did

-3-

Harris disclose that Loan E was not performing. C & A then notified Bank One that it would not purchase Loan E. Relying on its assertion that Bank One failed to advise it accurately of Loan E's status, C & A demanded that Bank One return its earnest money. Bank One refused, notifying C & A that it intended to terminate the Loan Sale Agreement and retain the earnest money as damages.

C & A filed this suit to recover its earnest money, alleging that Bank One and Bonnet breached the Loan Sale Agreement by failing to deliver a performing loan as represented in the Schedule of Loans. It also asserted that Bank One and Bonnet committed fraud because C & A relied on the Schedule of Loans and Harris's statements regarding Loan E's condition to enter into the Loan Sale Agreement and each later amendment. Bank One and Bonnet moved for summary judgment on both causes of action. C & A filed no response. The trial court granted Bank One and Bonnet summary judgment. This appeal followed.

DISCUSSION

*Preliminary Arguments*

According to C & A, two preliminary arguments dispose of this matter. First, C & A contends that the summary judgment must be reversed because Bank One and Bonnet admitted they breached the Loan Sale Agreement and committed fraud. To prove this claim, C & A relies on a statement in Bank One and Bonnet's motion for summary judgment in which they "assume the truth of the allegations set forth in Plaintiff's Second Amended Original Petition." In that pleading, C & A alleges Bank One and Bonnet breached the Loan Sale Agreement and committed fraud. We disagree with C & A's

-4-

argument because "parties cannot validly stipulate to legal conclusions to be drawn from the facts of the case. Such stipulations are without effect and bind neither the parties nor the court."[1] Consequently, because they are legal conclusions drawn from this case's facts, we will not give effect to the admissions C & A identifies.

Second, C & A argues that the Schedule of Loan's absence from the summary judgment record precludes a summary judgment ruling that no breach of contract occurred. We disagree because we assume, as we must at the summary judgment stage, the truth of the facts pleaded by C & A.[2] Therefore, we assume the Schedule of Loans represented that Loan E was performing. Having disposed of C & A's preliminary arguments, we now review the trial court's summary judgment de novo to determine whether Bank One and Bonnet established their right to prevail as a matter of law.[3] We follow well-established procedures when reviewing this summary judgment.[4]

### Breach of Contract

In its first two points of error, C & A claims the trial court erroneously granted summary judgment for Bank One and Bonnet on its breach of contract claim. To support its breach of contract claim, C & A asserts a two-fold argument. First, C & A claims that the Schedule of Loans, which was part of the invitation to bid package Harris forwarded to

---

[1] *Martinez v. Hardy*, 864 S.W.2d 767, 770 (Tex. App.--Houston [14th Dist.] 1993, no writ) (citations omitted).

[2] *See Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 604 (Tex. App.--San Antonio 1995, writ denied).

[3] *See American States Ins. Co. v. Arnold*, 930 S.W.2d 196, 199 (Tex. App.--Dallas 1996, writ denied).

[4] *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

it, specifically stated that Loan E was performing. Second, C & A relies on paragraph 25 of the Loan Sale Agreement, which provides that every covenant, term, representation, warranty, and agreement made by Bank One under the Loan Sale Agreement and in all bid documents survives closing and is independently enforceable. From these two provisions, C & A concludes that the statement in the Schedule of Loans was a representation that became a term in the parties' contract, survived closing, and is now independently enforceable. Accordingly, when Bank One (through its agent Bonnet) indicated before the final closing date that it intended to transfer nonperforming Loan E, Bank One and Bonnet breached the Loan Sale Agreement.

Bank One argues instead that the bid documents and the Loan Sale Agreement C & A executed precluded any statements in the Schedule of Loans from becoming a term of the parties' bargain or an enforceable representation. Therefore, the Schedule of Loan's statement that Loan E was performing did not become part of the parties' contract and Bank One did not breach the Loan Sale Agreement by delivering a nonperforming loan. Because neither party claims the Loan Sale Agreement is ambiguous, contract interpretation is a legal question for the Court.[5] After reviewing the summary judgment record, we agree with Bank One's interpretation of the Loan Sale Agreement and the bid documents.

The bid documents, circulated with the Schedule of Loans, contemporaneously advised C & A that statements in the Schedule of Loans pertaining to the quality, character,

---

[5] See Buys v. Buys, 924 S.W.2d 369, 372 (Tex. 1996); Richardson Lifestyle Ass'n v. Houston, 853 S.W.2d 796, 800 (Tex. App.--Dallas 1993, writ denied) (citing Praeger v. Wilson, 721 S.W.2d 597, 600 (Tex. App.--Fort Worth 1986, writ ref'd n.r.e.)).

-6-

or value of Loan E were not reliable and thus could not become a term of the Loan Sale Agreement. In the Invitation to Bid, which C & A executed and returned to Bank One, C & A expressly acknowledged that information in the Schedule of Loans might be inaccurate:

8. Loan Information and Review Process: A Schedule of Loans is attached hereto as Schedule A. This information has been obtained from the files of the former MBanks or Realty. The information contained on the schedule of Loans may be materially INACCURATE or INCOMPLETE and Bidders are encouraged to review the files related to each loan . . . to confirm this and other matters relevant to the value of each loan.

In both the Confidentiality Agreement and the Invitation to Bid, C & A acknowledged that Bank One made no representations, warranties, promises, covenants, agreements, or guaranties regarding the accuracy of any information forwarded to C & A or as to the quality, character, or value of Loan E. And, further, in the Confidentiality Agreement, C & A promised that it did not rely on any warranties or representations. Instead, when it executed the Bidder Qualification Certificate, C & A agreed to rely solely upon its own investigation regarding the quality and character of Loan E and "not on any information, statement, representation or promise made or to be made by Bank One or Bonnet in connection with the Loans." By executing these bid documents, C & A acknowledged that statements in the Schedule of Loans may be inaccurate and assented not to rely on them as binding representations, covenants, or terms of the parties' agreement.

The Loan Sale Agreement reinforces this conclusion. In this agreement, C & A expressly acknowledged in paragraph 10.7 that, rather than performing, Loan E "may be

subject to a default, a pending foreclosure, or petition seeking relief under the provisions of the United States Bankruptcy Code." As to any information to the contrary included in the Schedule of Loans, Bank One informed C & A in the same paragraph that it "has not undertaken to correct any misinformation or omissions of information which might be necessary to make any information disclosed to Purchaser not misleading in any respect." Knowing these facts, C & A nevertheless agreed to purchase Loan E "on the basis of its own independent investigation and credit evaluation" and again represented in paragraph 10.8 that it had "not sought or relied upon any representations, information, covenants, or agreements" of Bank One. Expanding these statements, in paragraph 27, C & A reiterated that Bank One made no representations or warranties regarding Loan E's value, quality, or condition; that it did not rely on any representations or warranties regarding Loan E's value, quality, or condition; and that it agreed to accept Loan E "as is" and "with all faults."

From these documents, we conclude that at the time C & A signed the Loan Sale Agreement, it acknowledged that the statement in the Schedule of Loans was not a representation that could be relied upon; expressly agreed not to rely upon that statement; and, in fact, did not rely on that statement. Instead, C & A agreed to buy an admittedly risky loan and to take that loan "as is" and "with all faults." Thus, despite the statement in the Schedule of Loans, C & A did not contract to purchase a performing loan from Bank One; therefore, Bank One's failure to tender a performing loan cannot, as a matter of law, be a breach of contract.

Nor did the trial court err when it granted summary judgment for Bonnet. As C &

-8-

A itself recognizes, Bonnet acted only as Bank One's agent in handling Loan E's sale. Bonnet did not sign the Loan Sale Agreement in any capacity and is not a party to the Loan Sale Agreement.[6] Thus, as a matter of law, C & A cannot maintain a breach of contract action against an entity not a party to the contract.[7] Accordingly, the trial court properly granted summary judgment for Bonnet on C & A's breach of contract claim. We overrule C & A's first and second points of error.

## Fraud

In its third through sixth points of error, C & A argues that the trial court erroneously granted Bank One and Bonnet summary judgment on its fraud claim. Advocating its fraud allegations, C & A contends that Bank One and Bonnet initially misrepresented Loan E was performing in the Schedule of Loans and that Harris repeated and reinforced this misrepresentation when he told Krunic on three occasions that Loan E was current. According to C & A, it relied on these misrepresentations when it originally entered the Loan Sale Agreement and when it agreed to each amendment. Absent these misrepresentations, C & A argues it would not have deposited any escrow funds with Bank One and Bonnet. C & A claims these actions constitute fraud.[8]

Bank One and Bonnet moved for summary judgment, asserting two grounds. First,

---

[6] *See Shank, Irwin, Conant, & Williamson v. Durant, Mankoff, Davis, Wolens & Francis*, 748 S.W.2d 494, 499 (Tex. App.--Dallas 1988, no writ).

[7] *See Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 368 (Tex. App.--Austin 1982, writ ref'd n.r.e.).

[8] *See Tilton v. Marshall*, 925 S.W.2d 672, 684 (Tex. 1996) (orig. proceeding) (stating the elements of fraud).

they argued that because C & A agreed to purchase Loan E "as is" and "with all faults," as a matter of law, none of their actions could have caused C & A damage.[9] Second, they argued that because C & A knew the information in the Schedule of Loans was not trustworthy, and because C & A promised not to rely on their current or future statements regarding Loan E's value, C & A could not have justifiably relied on the identified statements. The trial court, without stating its reasons, granted summary judgment. We affirm if either ground supports the judgment.[10]

In its fourth point of error, C & A argues that Bank One and Bonnet failed to establish as a matter of law that it did not justifiably rely on the statement in the Schedule of Loans and on Harris's statements. But both the bid documents and the Loan Sale Agreement expressly informed C & A that any current or future statements by Bank One and Bonnet regarding Loan E's condition or value were neither trustworthy nor reliable. Further, when C & A executed these documents, it contractually agreed not to rely on any statements of this kind. Consequently, the contractual documents C & A signed vitiated any reliance C & A may have placed on statements attributable to Bank One and Bonnet.

We agree with Bank One and Bonnet that *Airborne Freight v. C.R. Lee Enterprises, Inc.*,[11] compels this conclusion. In *Airborne*, the plaintiff contracted with Airborne Freight to provide delivery services. The parties executed a written agreement that contained a

---

[9] *See Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161-63 (Tex. 1995).

[10] *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

[11] 847 S.W.2d 289 (Tex. App.--El Paso 1992, writ denied).

clause allowing Airborne to terminate the agreement on thirty days' written notice without cause. The plaintiff also contractually agreed that "no representations have been made . . . about the duration of the Agreement" and then disclaimed "any reliance on any definite duration of this Agreement."[12] During the course of the contractual relationship, one of Airborne's agents promised the plaintiff that "as long as you do your job, you'll have a job." Relying on this statement, the plaintiff expanded his business, incurring debt. When Airborne exercised its contractual right to terminate the agreement with thirty days notice, the plaintiff sued, arguing that the agent's statements constituted fraud.

After a trial, the jury found Airborne defrauded the plaintiff. But the El Paso Court of Appeals reversed, concluding that the "written contract signed by [plaintiff's president], vitiated any reliance [plaintiff] might have placed in the sweeping, off-hands statement of [defendant's agent]."[13] Significantly, the court recognized that "[t]he written contract contained ample cautionary language which would preclude exclusive reliance by a reasonable businessperson on verbal statements contradicting the written agreement," and that "the disclaimers contained in the contract clearly gave notice that any conditional or oral promise would not control."[14] Concluding that "a binding written agreement was entered by the parties and controlled their actions," the appellate court held that "[t]he terms of the

---

[12] *Id.* at 291-92.

[13] *Id.* at 297.

[14] *Id.*

written contract simply belie any reliance on [defendant's agent's] verbal assurance."[15]

So, too, in this case do the terms of the parties' agreement belie reliance on the statement in the Schedule of Loans and Harris's statements. We have already summarized the controlling documents' provisions that: informed C & A that Bank One and Bonnet's statements should not be relied upon; contractually obligated C & A not to rely on any of these statements; and assured Bank One and Bonnet that, in fact, C & A did not rely on these statements. But several provisions deserve more attention.

First, in the Bidder Qualification Certificate, C & A's promise not to rely on "any information, statement, representation or promise" made by Bank One or Bonnet regarding Loan E extended not only to then-existing statements but also to any statements "to be made" in the future. Thus, C & A's promise covered statements that existed when it executed the bid documents—like the one in the Schedule of Loans—as well as to statements made after it executed the Loan Sale Agreement—like Harris's statements. Second, in the Invitation to Bid and the Loan Sale Agreement, C & A learned that the information in the Schedule of Loans might be inaccurate and misleading and that Bank One and Bonnet had not undertaken to correct any erroneous information. Third, in the Loan Sale Agreement, C & A agreed to rely only on its own evaluation and investigation of Loan E's value. Fourth, and finally, C & A, in multiple documents, promised not to rely on any Bank One or Bonnet statements when it agreed to purchase Loan E "as is" and "with

---

[15] *Id*. at 298.

all faults." As in *Airborne*, these documents contain ample cautionary language precluding any reliance C & A might have placed on the statement in the Schedule of Loans or on Harris's statements.

Nevertheless, C & A argues *Airborne* does not apply because it "was not a summary judgment case." In making this point, C & A ignores the essential fact that the appellate court found no evidence supported the jury's fraud finding. Consequently, after reviewing the evidence, the court determined that "as a matter of law" the plaintiff could not justifiably rely on Airborne's agent's comments.[16] We perform essentially the same analysis here. Thus, this distinction lacks merit.

In another attempt to distinguish *Airborne*, C & A claims that case applies only when the oral representations contradict the written materials. Since in this case the statements involved do not contradict the Loan Sale Agreement, C & A argues *Airborne* does not apply. We disagree because the fact that the representations contradicted the written contract was but one factor the *Airborne* court considered. In that case, the court relied more on the portion of the parties' contract that warned the plaintiff not to rely on oral statements. Here, as in *Airborne*, the Loan Sale Agreement and other bid documents contain equally compelling cautionary language. Consequently, we find the El Paso court's reasoning persuasive in this case and conclude, as a matter of law, that C & A could not justifiably rely on any statements by Bank One or Bonnet. We overrule C & A's fourth point of error.

---

[16] *Id.* at 297.

-13-

In C & A's fifth point of error, it argues that the trial court erroneously granted summary judgment for Bonnet because fact issues exist as to whether Bonnet independently defrauded C & A. In its sixth point of error, C & A argues Bank One should be liable vicariously for its agent's independent fraud. To support both points of error, C & A maintains that Bonnet cannot claim the protection of the contractual provisions already discussed because it is not a party to the Loan Sale Agreement. Notwithstanding this fact, C & A contractually agreed that the quoted contractual provisions protect not only Bank One, but also Bonnet. Bank One, a party to the Loan Sale Agreement, obviously included in the agreement contract terms intended to benefit its agent, Bonnet. Thus, Bonnet need not be a party to the Loan Sale Agreement to claim its protection.[17] We overrule C & A's fifth and sixth points of error.

Finally, in addition to the six points of error in which C & A argues specifically why the trial court erroneously granted summary judgment, it asserts a seventh omnibus point of error. In this point of error, C & A claims generally that "[t]he trial court erred in granting the motion of Bank One and Bonnet for Summary Judgment" and, as support, incorporates its earlier arguments. We overrule point of error seven for the same reasons we overruled C & A's earlier points of error. We need not reach C & A's third point of error, which challenges the summary judgment ground that, as a matter of law, Bank One and Bonnet's alleged wrongful conduct could not have caused C & A damage. *See* Tex. R.

---

[17] *See Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975) (recognizing that under certain circumstances, contract terms may inure to benefit of entity not a party to the contract).

App. P. 90(a).

     We affirm the trial court's judgment.

                                             _____
                                             DEBORAH G. HANKINSON
                                           JUSTICE

Publish
Tex. R. App. P. 90
951569F.P05