Opinion Issued February 12, 2004 










     






In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01013-CV




COASTAL BANK SSB, Appellant

V.

CHASE BANK OF TEXAS, N.A., f/k/a COMMERCE BANK NATIONAL
ASSOCIATION, Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 00-01212






O P I N I O N

          This is an appeal of a summary judgment rendered in favor of
appellee/defendant, Chase Bank of Texas, N.A., f/k/a Commerce Bank National
Association, in a suit for fraudulent inducement and negligent misrepresentation
brought by appellant/plaintiff Coastal Bank ssb. In three issues presented for review,
Coastal contends the trial court erred in rendering summary judgment because there
was substantial evidence of fraudulent inducement and negligent misrepresentation
and because Chase did not negate the element of reliance as a matter of law. We must
determine whether the waivers/disclaimers that Coastal signed as part of its contract
with Chase defeat its causes of action. Because we conclude that they do, we affirm.
FACTS
          In the summer of 1998, Chase invited Coastal to join a syndicate of banks that
had been lending cash to MCA, a Michigan-based mortgage company. At MCA’s
request, Chase was increasing the amount of MCA’s available credit to $300 million
and was seeking the participation of additional banks to accomplish this. Coastal
agreed in August 1998 to invest $10 million in what is known as a “seasoned” line
of credit (one containing higher-risk loans and, consequently, paying a higher rate of
interest) as a member of the syndicate of banks lending money to MCA; it signed the
contract with Chase in November 1998. Less than a month later, the syndicated
banks commenced an inquiry into MCA’s financial status and discovered that MCA
had been systematically defrauding the banks by double-pledging millions of dollars
in loans. Ultimately, all of the banks in the syndicate lost a considerable amount of
money; Coastal’s losses totaled approximately $7.5 million.
          Before Coastal signed the contract agreeing to participate as a member of the
bank syndicate, Chase provided information to Coastal about MCA in the form of a
confidential memorandum to be used in Coastal’s decision-making process. Both the
confidential memorandum and the contract contained clauses stating that the
“participant” (Coastal) had completed its own credit analysis, independently and
without reliance on the “Lead” (Chase), but based instead on the borrower’s (MCA’s)
financial statements. 
          Evidently, Coastal performed only a perfunctory credit analysis. Coastal did
not attend a meeting that was held by MCA and various syndicate members to discuss
the investment; nor did Coastal seek or obtain any credit information directly from
MCA. Instead, it limited its inquiry to Chase officers and to a loan officer at the Bank
of New York with whom a Coastal officer, Don Mach, was familiar. When Mach
inquired about MCA’s history with Chase, Audrey Lokker—the Chase loan officer
responsible for the MCA credit—responded that the history was “very satisfactory.” 
Coastal apparently made no further inquiries.
          After MCA’s fraud was discovered and Coastal had lost the better part of its
investment, Coastal sued Chase for fraud, fraudulent inducement and negligent
misrepresentation, based primarily on Lokker’s statement that Chase’s history with
MCA was “very satisfactory.” Chase moved for summary judgment on the grounds
that there was no evidence to support Coastal’s claims and that Chase had negated
reliance—an essential element of all claims—as a matter of law. The trial court
granted Chase’s motion and rendered a take-nothing summary judgment against
Coastal, from which Coastal now appeals.
DISCUSSION
          In three issues presented for review, Coastal argues that the trial court
improperly rendered summary judgment because Coastal produced more than a
scintilla of evidence of fraud and negligent misrepresentation, and because Chase did
not negate reliance as a matter of law. 
          Standard of Review
          Summary judgment is appropriate only when the movant shows that there are
no disputed issues of material fact and the moving party is entitled to judgment as a
matter of law on the issues set out in the motion. Tex. R. Civ. P. 166a(c); Tex.
Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 252 (Tex. 2002). As the defendant
moving for summary judgment, Chase was required to disprove at least one essential
element of each of Coastal’s theories of recovery as a matter of law. City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979). A no-evidence motion
for summary judgment is properly granted if, after adequate time for discovery, the
non-movant fails to produce more than a scintilla of evidence raising a genuine issue
of material fact on the challenged elements. See Tex. R. Civ. P. 166a(i); Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). The court must grant the motion unless the
non-movant produces summary judgment evidence that raises a genuine issue of
material fact. Id. 
          We hold that Chase disproved the element of reliance common to fraud,
fraudulent inducement, and negligent misrepresentation as a mater of law.
          Negligent Misrepresentation, Fraud, and Fraudulent Inducement
          In its third issue, Coastal contends that Chase failed to establish as a matter of
law that Coastal did not rely on Chase’s misrepresentations. Coastal contends that
Lokker’s statement that Chase’s history with MCA was “very satisfactory” was an
actionable affirmative misrepresentation made to fraudulently induce Coastal into
participating in the syndicate. Coastal further contends that Chase violated an
affirmative duty to disclose information concerning MCA, thus committing fraud. 
          To prevail on a negligent misrepresentation claim, the plaintiff must
demonstrate that (1) the representation was made by a defendant in the course of his
business, or in a transaction in which he had a pecuniary interest; (2) the defendant
supplied false information for the guidance of others in their business; (3) the
defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffered pecuniary loss by
justifiably relying on the representation. Fed. Land Bank Ass’n. v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991) (emphasis added).
          To prevail on a fraud claim, a plaintiff must prove that (1) the defendant made
a material representation that was false; (2) it knew the representation was false or
made it recklessly as a positive assertion without any knowledge of its truth; (3) it
intended to induce the plaintiff to act upon the representation; and (4) the plaintiff
actually and justifiably relied upon the representation and thereby suffered injury. 
Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001)
(emphasis added). Fraudulent inducement is a particular species of fraud that arises
only in the context of a contract and requires the existence of a contract as part of its
proof. Haase v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001). That is, in a fraudulent
inducement claim, the elements of fraud must be established as they relate to an
agreement between the parties. Id.
          Coastal contends that (1) Lokker’s statement that Chase’s relationship with
MCA was “very satisfactory” was false; (2) Chase knew it was false; (3) Chase
intended for Coastal to rely on it; (4) Chase had a duty to disclose all of the
information about MCA that Coastal identifies in its brief, i.e., information related to
MCA’s performance; and (5) Chase had “special knowledge” that Coastal could not
have acquired on its own; therefore, Coastal justifiably relied, to its harm, on
Lokker’s misrepresentation and the incomplete information Chase disclosed. Chase
argues that, even assuming these five assertions are true, Coastal still cannot prove
that its reliance on Lokker’s statement or Chase’s silence was justified, because
justifiable reliance in both causes of action is negated as a matter of law by the
“independent investigation and analysis” provisions in the confidential memorandum
and the contract. 
          Generally, reliance on representations made in a business or commercial
transaction is not justified when the representation takes place in an adversarial
context. See McCamish, Martin, Brown & Loeffler v. F. E. Appling Interests, 991
S.W.2d 787, 794 (Tex. 1999). In determining whether Coastal met the justifiable
reliance element, we must consider the nature of the relationship and the contract. Id. 
A party to an arm’s length transaction must exercise ordinary care and reasonable
diligence for the protection of his own interests, and a failure to do so is not excused
by mere confidence in the honesty and integrity of the other party. Thigpen v. Locke,
363 S.W.2d 247, 251 (Tex. 1962); TCI Cablevision of Tex., Inc. v. S. Tex. Cable
Television, Inc., 791 S.W.2d 269, 273 (Tex. App.—Corpus Christi 1990, writ denied).
          This was an arm’s length transaction between two sophisticated financial
institutions who were both represented by counsel. While such a relationship is not,
standing alone, dispositive of the issue of reliance, it is a factor to be considered. See
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 180 (Tex. 1997). Although
a disclaimer of reliance will not always bar a fraudulent inducement claim, such a
claim may be waived when the disclaimer clearly expresses the parties’ intent to
waive such claims. Id. at 181. A contract and the circumstances surrounding its
formation determine whether the disclaimer of reliance is binding. Id. at 179. The
circumstances surrounding the formation of the contract here and the nature of the
disclaimers included in both the confidential memorandum and the contract persuade
us that Coastal’s reliance on Lokker’s statement and Chase’s silence was not justified.
          The confidential memorandum sent to Coastal contains the following “Notice
to Recipients” that contains express disclaimers of any warranty and multiple
statements indicating that Coastal was responsible for conducting its own analysis. 
This notice provides in pertinent part:
This Confidential Information Memorandum . . . has been prepared
solely for informational purposes from information supplied by MCA
and . . .supplied by Chase Securities, Inc. [Chase Securities has not]
independently verified any of the information and data contained herein
and make[s] no representation or warranty as to the accuracy or
completeness of such information. By accepting this Confidential
memorandum each recipient agrees that [Chase] shall not have any
liability for any representations (express or implied) contained in,
or for any omissions from, this Confidential Memorandum or any
other written or oral communications transmitted to the recipient by or
on behalf of [Chase] or MCA in the course of the recipient’s evaluation
of the proposed financing.
 
The information contained herein has been prepared to assist interested
parties in making their own evaluation of MCA and does not purport to
be all-inclusive or to contain all of the information that may be material
to a prospective participant’s decision to participate in the financing. 
Each recipient of the information and data contained herein should
perform its own independent investigation and analysis of the
transaction and the creditworthiness of MCA. The information and
data contained herein are not a substitute for the recipient’s
independent evaluation and analysis.
 
In addition to the disclaimers contained in this preliminary document, the contract
contains a similar provision in paragraph 12:
The Participant [Coastal] acknowledges that it has, independently and 
without reliance upon the Lead [Chase] and based on the financial
statements supplied by the Borrowers [MCA] and such other documents
and information as the Participant has deemed appropriate, made its own
credit analysis and decision to enter into this Agreement. The
Participant also acknowledges that it will, independently and without
reliance upon the Lead and based on such financial statements and
such other documents and information as the Participant has deemed
appropriate, perform and will continue to perform (a) a complete
analysis of the credit quality of and documentation for Seasoned
Warehouse Revolving Loans, and (b) the maintenance of complete and
current credit information on the Borrowers during the term thereof.

The language in these documents is clear and unambiguous. Coastal contractually
agreed not to rely on the information or statements made by Chase, but to perform an
independent investigation when deciding whether to participate and to rely on its own
investigation and analysis.
          In C&A Investments, Inc. v. Bonnet Resources Corp., 959 S.W.2d 258, 263-64
(Tex. App.—Dallas 1997, writ denied), similarly, the sophisticated purchaser of a
commercial real estate loan sale agreement, C&A, sued the seller, Bank One, and the
seller’s agent, Bonnet Resources, in contract and fraud, seeking to recover its earnest
money. C&A claimed the Bonnet officer who oversaw the sale had represented that
the loan was current when, in fact, it was in default. Id. at 259-60. The court held that
because the contract before it contained “ample cautionary language” precluding the 
purchaser’s reliance on the seller’s representations, the purchaser had contractually
agreed not to rely on the seller’s statements and could not recover on its fraud claim.
The situation and disclaimers in C&A are virtually indistinguishable from the
situation and disclaimers here. See id. at 261-63; see also Airborne Freight Corp.,
Inc. v. C.R. Lee Enter., Inc., 847 S.W.2d 289, 297 (Tex. App.—El Paso 1992, writ
denied) (written contract vitiated any justifiable reliance of plaintiff on “sweeping
off-hand statement” of defendant’s agent). We conclude that Coastal cannot prove
that it justifiably relied on Chase’s representation or silence. See Schlumberger, 959
S.W.2d at 181; Thigpen, 363 S.W.2d at 251.
          We hold that Chase established its entitlement to summary judgment as a
matter of law. We overrule all issues presented for review.
          We affirm the summary judgment.
 

                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Justices Taft, Nuchia, and Keyes.