COASTAL BANK SSB, Appellant

v.

CHASE BANK OF TEXAS, N.A., f/k/a
Commerce Bank National
Association, Appellee.

No. 01–01–01013–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 2004.

Illeana M. Blanco, J. Clifford Gunter, III, Ralph McBride, Bryan Scott Dumesnil, Bracewell & Patterson, L.L.P., Houston, for appellant.

B. Daryl Bristow, Louis L. Bagwell, Michael Byron Bennett, Baker & Botts L.L.P., Houston, for appellee.

Panel consists of Justices TAFT, NUCHIA, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal of a summary judgment rendered in favor of appellee/defendant, Chase Bank of Texas, N.A., f/k/a Commerce Bank National Association, in a suit for fraudulent inducement and negligent misrepresentation brought by appellant/plaintiff Coastal Bank ssb. In three issues presented for review, Coastal contends the trial court erred in rendering summary judgment because there was substantial evidence of fraudulent inducement and negligent misrepresentation and because Chase did not negate the element of reliance as a matter of law. We must determine whether the waivers/disclaimers that Coastal signed as part of its contract with Chase defeat its causes of action. Because we conclude that they do, we affirm.

## FACTS

In the summer of 1998, Chase invited Coastal to join a syndicate of banks that had been lending cash to MCA, a Michigan-based mortgage company. At MCA's request, Chase was increasing the amount of MCA's available credit to $300 million and was seeking the participation of additional banks to accomplish this. Coastal agreed in August 1998 to invest $10 million in what is known as a "seasoned" line of credit (one containing higher-risk loans and, consequently, paying a higher rate of interest) as a member of the syndicate of banks lending money to MCA; it signed the contract with Chase in November 1998. Less than a month later, the syndicated banks commenced an inquiry into MCA's financial status and discovered that MCA had been systematically defrauding the banks by double-pledging millions of dollars in loans. Ultimately, all of the banks in the syndicate lost a considerable amount of money; Coastal's losses totaled approximately $7.5 million.

Before Coastal signed the contract agreeing to participate as a member of the bank syndicate, Chase provided information to Coastal about MCA in the form of a confidential memorandum to be used in Coastal's decision-making process. Both the confidential memorandum and the contract contained clauses stating that the "participant" (Coastal) had completed its own credit analysis, independently and without reliance on the "Lead" (Chase), but based instead on the borrower's (MCA's) financial statements.

Evidently, Coastal performed only a perfunctory credit analysis. Coastal did not attend a meeting that was held by MCA and various syndicate members to discuss the investment; nor did Coastal seek or obtain any credit information directly from MCA. Instead, it limited its inquiry to Chase officers and to a loan

officer at the Bank of New York with whom a Coastal officer, Don Mach, was familiar. When Mach inquired about MCA's history with Chase, Audrey Lokker—the Chase loan officer responsible for the MCA credit—responded that the history was "very satisfactory." Coastal apparently made no further inquiries.

After MCA's fraud was discovered and Coastal had lost the better part of its investment, Coastal sued Chase for fraud, fraudulent inducement and negligent misrepresentation, based primarily on Lokker's statement that Chase's history with MCA was "very satisfactory." Chase moved for summary judgment on the grounds that there was no evidence to support Coastal's claims and that Chase had negated reliance—an essential element of all claims—as a matter of law. The trial court granted Chase's motion and rendered a take-nothing summary judgment against Coastal, from which Coastal now appeals.

## DISCUSSION

In three issues presented for review, Coastal argues that the trial court improperly rendered summary judgment because Coastal produced more than a scintilla of evidence of fraud and negligent misrepresentation, and because Chase did not negate reliance as a matter of law.

### Standard of Review

Summary judgment is appropriate only when the movant shows that there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law on the issues set out in the motion. Tex.R. Civ. P. 166a(c); *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex.2002). As the defendant moving for summary judgment, Chase was required to disprove at least one essential element of each of Coastal's theories of recovery as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589

S.W.2d 671, 679 (Tex.1979). A no-evidence motion for summary judgment is properly granted if, after adequate time for discovery, the non-movant fails to produce more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See* Tex.R. Civ. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The court must grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact. *Id.*

We hold that Chase disproved the element of reliance common to fraud, fraudulent inducement, and negligent misrepresentation as a matter of law.

### Negligent Misrepresentation, Fraud, and Fraudulent Inducement

■ In its third issue, Coastal contends that Chase failed to establish as a matter of law that Coastal did not rely on Chase's misrepresentations. Coastal contends that Lokker's statement that Chase's history with MCA was "very satisfactory" was an actionable affirmative misrepresentation made to fraudulently induce Coastal into participating in the syndicate. Coastal further contends that Chase violated an affirmative duty to disclose information concerning MCA, thus committing fraud.

■ To prevail on a negligent misrepresentation claim, the plaintiff must demonstrate that (1) the representation was made by a defendant in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by *justifiably relying* on the representation. *Fed. Land*

*Bank Ass'n. v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (emphasis added).

■ To prevail on a fraud claim, a plaintiff must prove that (1) the defendant made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and *justifiably relied* upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001) (emphasis added). Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. *Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex.2001). That is, in a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Id.*

Coastal contends that (1) Lokker's statement that Chase's relationship with MCA was "very satisfactory" was false; (2) Chase knew it was false; (3) Chase intended for Coastal to rely on it; (4) Chase had a duty to disclose all of the information about MCA that Coastal identifies in its brief, *i.e.,* information related to MCA's performance; and (5) Chase had "special knowledge" that Coastal could not have acquired on its own; therefore, Coastal justifiably relied, to its harm, on Lokker's misrepresentation and the incomplete information Chase disclosed. Chase argues that, even assuming these five assertions are true, Coastal still cannot prove that its reliance on Lokker's statement or Chase's silence was justified, because justifiable reliance in both causes of action is negated as a matter of law by the "independent investigation and analysis" provisions in the confidential memorandum and the contract.

■ Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999). In determining whether Coastal met the justifiable reliance element, we must consider the nature of the relationship and the contract. *Id.* A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party. *Thigpen v. Locke,* 363 S.W.2d 247, 251 (Tex.1962); *TCI Cablevision of Tex., Inc. v. S. Tex. Cable Television, Inc.,* 791 S.W.2d 269, 273 (Tex.App.-Corpus Christi 1990, writ denied).

■ This was an arm's length transaction between two sophisticated financial institutions who were both represented by counsel. While such a relationship is not, standing alone, dispositive of the issue of reliance, it is a factor to be considered. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 180 (Tex.1997). Although a disclaimer of reliance will not always bar a fraudulent inducement claim, such a claim may be waived when the disclaimer clearly expresses the parties' intent to waive such claims. *Id.* at 181. A contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding. *Id.* at 179. The circumstances surrounding the formation of the contract here and the nature of the disclaimers included in both the confidential memorandum and the contract persuade us that Coastal's reliance on Lokker's statement and Chase's silence was not justified.

The confidential memorandum sent to Coastal contains the following "Notice to

Recipients" that contains express disclaimers of any warranty and multiple statements indicating that Coastal was responsible for conducting its own analysis. This notice provides in pertinent part:

> This Confidential Information Memorandum ... has been prepared solely for informational purposes from information supplied by MCA and ... supplied by Chase Securities, Inc. [Chase Securities has not] independently verified any of the information and data contained herein and make[s] no representation or warranty as to the accuracy or completeness of such information. By accepting this Confidential memorandum each recipient agrees that [Chase] **shall not have any liability for any representations (express or implied) contained in, or for any omissions from, this Confidential Memorandum** or any other written or oral communications transmitted to the recipient by or on behalf of [Chase] or MCA in the course of the recipient's evaluation of the proposed financing.
>
> The information contained herein has been prepared to assist interested parties in making their own evaluation of MCA and does not purport to be all-inclusive or to contain all of the information that may be material to a prospective participant's decision to participate in the financing. Each recipient of the information and data contained herein should perform its own independent investigation and analysis of the transaction and the creditworthiness of MCA. **The information and data contained herein are not a substitute for the recipient's independent evaluation and analysis.**

In addition to the disclaimers contained in this preliminary document, the contract contains a similar provision in paragraph 12:

> The Participant [Coastal] acknowledges that it has, **independently and without reliance upon the Lead [Chase]** and based on the financial statements supplied by the Borrowers [MCA] and such other documents and information as the Participant has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. The Participant also acknowledges that it will, **independently and without reliance upon the Lead** and based on such financial statements and such other documents and information as the Participant has deemed appropriate, perform and will continue to perform (a) a complete analysis of the credit quality of and documentation for Seasoned Warehouse Revolving Loans, and (b) the maintenance of complete and current credit information on the Borrowers during the term thereof.

The language in these documents is clear and unambiguous. Coastal contractually agreed not to rely on the information or statements made by Chase, but to perform an independent investigation when deciding whether to participate and to rely on its own investigation and analysis.

In *C & A Investments, Inc. v. Bonnet Resources Corp.*, 959 S.W.2d 258, 263–64 (Tex.App.-Dallas 1997, writ denied), similarly, the sophisticated purchaser of a commercial real estate loan sale agreement, C & A, sued the seller, Bank One, and the seller's agent, Bonnet Resources, in contract and fraud, seeking to recover its earnest money. C & A claimed the Bonnet officer who oversaw the sale had represented that the loan was current when, in fact, it was in default. *Id.* at 259–60. The court held that because the contract before it contained "ample cautionary language" precluding the purchaser's reliance on the seller's representations, the purchaser had contractually agreed not to rely on the seller's statements and could not recover on its fraud claim. The situation and disclaimers in *C & A* are virtually

indistinguishable from the situation and disclaimers here. *See id.* at 261–63; *see also Airborne Freight Corp., Inc. v. C.R. Lee Enter., Inc.,* 847 S.W.2d 289, 297 (Tex. App.-El Paso 1992, writ denied) (written contract vitiated any justifiable reliance of plaintiff on "sweeping off-hand statement" of defendant's agent). We conclude that Coastal cannot prove that it justifiably relied on Chase's representation or silence. *See Schlumberger,* 959 S.W.2d at 181; *Thigpen,* 363 S.W.2d at 251.

We hold that Chase established its entitlement to summary judgment as a matter of law. We overrule all issues presented for review.

We affirm the summary judgment.