Opinion issued May 14, 2009


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00272-CV






HENRY P. WUERTZ, Appellant


V.


NATIONWIDE LIFE INSURANCE COMPANY AND RONALD A.
ROTTHAUS, Appellees






On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 2005-17530






MEMORANDUM OPINION


 Appellant, Henry P. Wuertz, appeals the trial court's order that granted
summary judgment in favor of the appellees, Nationwide Life Insurance Company
and Ronald Rotthaus. In two issues, Wuertz argues that (1) fact issues exist on
whether the appellees made misrepresentations that induced him to enter into an
insurance contract, he reasonably relied on the misrepresentations, and he suffered
damages as a result of the misrepresentations and (2) the trial court erred in granting
summary judgment on his complaint alleging violations of the Deceptive Trade
Practices Act (1) (DTPA). 

 We affirm. 

Background


 Wuertz is the president and owner of Dunhill Products, a company that buys
and sells refinery feed stocks, manufactures biodiesel fuels, and constructs marine
tank terminals. In 2000, Wuertz met with Rhonda Morey, an officer with Union
Planters Bank, to discuss an investment for tax-planning purposes. At a meeting in
May 2001, Wuertz, Morey, and Ron Rotthaus, a marketing representative of
Nationwide Life Insurance Company, discussed a variable annuity life policy. The
summary judgment evidence shows that the parties have different recollections of the
meeting.

 Wuertz asserts that Rotthaus and Morey made representations that he could
obtain $5,500,000 in life insurance with a single premium payment of $300,000.
Rotthaus and Morey deny that either of them told Wuertz that he would only have to
make one premium payment. 

 At the end of the May meeting, Wuertz signed an application for life insurance
that required a $200,000 annual premium for $3,512,438.00 in insurance payable at
death. The evidence also shows that, on June 5, 2001, Wuertz signed an application
amendment that increased his death benefit to $5,500,000 and also increased his
annual premium to $300,000. The amendment specifically states that the "Specified
Amount" is $5,500,000 and the "Annual Premium" is $300,000. 

 In his third amended petition, Wuertz sued Nationwide and Rotthaus for fraud,
negligent misrepresentation, violations of the Texas Insurance Code section
541.052(a), (2) and violations of the DTPA, sections 17.46(a)(4), (5) and (12). (3) He
contended that Morey, an agent of Nationwide and Rotthaus, misrepresented that the
insurance policy would require only a $300,000 payment to be sufficient for
$5,500,000 in the event of Wuertz's death. Nationwide and Rotthaus filed a
traditional and no-evidence motion for summary judgment. The appellees argued that

 1. On [Wuertz's] claim for fraud, there is no evidence that (a) any
person who made an alleged misrepresentation to [Wuertz]
intended to induce [Wuertz] to act upon the representation or (b)
[Wuertz] actually and justifiably relied upon the representation. 


 2. On [Wuertz's] claim for negligent misrepresentation, there is no
evidence that (a) the speaker of the alleged misrepresentation did
not exercise reasonable care or competence in obtaining or
communicating the information to [Wuertz] or (b) [Wuertz]
justifiably relied on the representation. 


 3. On [Wuertz's] Insurance Code claim and DTPA claim, there is no
evidence that any unfair act or practice caused any damages to
[Wuertz].


 The appellees also moved for traditional summary judgment, stating that "any
reliance by [Wuertz] on the alleged oral misrepresentations is unjustified as a matter
of law, and those alleged misrepresentations cannot be a cause of any injury to him." 
Attached to their motion was the May 9, 2001 insurance policy application, signed
by Wuertz, which has an "X" checked next to the "Annual" planned premium and the
amount $200,000. Exhibit 9, attached to the motion for summary judgment, is an
amended policy application with $5,500,000 as the specified amount of insurance and
with an annual premium of $300,000. Exhibit 10 is another amendment form that
shows the specified amount of $5,500,000, for which the "Annual Premium is
$300,000." The amendment was signed by Wuertz on June 5, 2001. The insurance
policy also shows an initial premium of $300,000, with scheduled annual premiums
of $300,000. Also attached to the summary judgment motion was Wuertz's
deposition testimony, in which he admitted that he probably did not read the
application for insurance before he signed it. He also stated that he "typically
[doesn't] read life insurance policies and things like that." 

 Wuertz responded that

Mr. Wuertz's discussion with Nationwide involved only a one-time
premium of $300,000. There was never any conversation about any
further payments.


The sole dollar figure representing premiums on the application is
$300,000. Nowhere does the application outline a five-year premium
period. Nowhere does the application tally the total premium at $1.5
million.


The sole dollar figure representing premiums on the policy is $300,000. 
Nowhere does the policy outline a five-year premium period. Nowhere
does the policy tally the total premium at $1.5 million.


The only purported document or other evidence that Nationwide can
produce is an "illustration" [that is not part of the contract] that shows
a premium of $200,000 for a death benefit of $3,500,000. 

 

Wuertz also attached his affidavit and depositions from himself and Rotthaus. 
Appellees replied to Wuertz's response, arguing that Wuertz could not prove
justifiable reliance.

 On February 28, 2007, the trial court granted a motion for partial summary
judgment in favor of appellees without stating whether it was granting the traditional
or no-evidence motion for summary judgment. 

 Wuertz appeals the granting of the traditional summary judgment and the no-evidence summary judgment. (4) 

Motion for Summary Judgment


 Because summary judgment is a question of law, we review a trial court's
summary judgment decision de novo. Bendigo v. City of Houston, 178 S.W.3d 112,
113 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The standard of review for a
traditional summary judgment motion is threefold: (1) the movant must show that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor
of the nonmovant and resolve any doubts in the nonmovant's favor. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c).
A defendant seeking summary judgment must as a matter of law negate at least one
element of each of the plaintiff's theories of recovery or plead and prove each element
of an affirmative defense. EPGT Texas Pipeline, L.P. v. Harris County Flood
Control Dist., 176 S.W.3d 330, 335 (Tex. App.--Houston [1st Dist.] 2004, no pet.). 
We affirm the summary judgment if any of the theories presented to the trial court and
preserved for appellate review are meritorious. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004) (summary judgment which does not specify basis
for court's ruling may be affirmed only on "theories presented to the trial court and
preserved for appellate review"); Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623,
626 (Tex. 1996); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

 A party moving for no-evidence summary judgment must assert only that there
is no evidence of one or more essential elements of a claim or defense on which the
non-movant would have the burden of proof at trial. See Tex. R. Civ. P. 166a(i). The
burden then shifts to the non-movant to produce evidence raising a fact issue on the
challenged elements. See id. A no-evidence summary judgment is improper if the
respondent brings forth more than a scintilla of probative evidence to raise a genuine
issue of material fact. Id.; Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167,
172 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so
weak as to do no more than create a mere surmise or suspicion of a fact. Forbes, 124
S.W.3d at 172. "More than a scintilla of evidence exists if the evidence would allow
reasonable and fair-minded people to differ in their conclusions." Id. As with a
traditional summary judgment, we view the evidence in the light most favorable to
the non-movant, disregarding all contrary evidence and inferences. King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). When a party seeks both a traditional
and a no-evidence summary judgment, we first review the trial court's summary
judgment under the no-evidence standards of Rule 166a(i). Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant failed to produce more
than a scintilla of evidence raising a genuine fact issue on the challenged elements of
his claims, then there is no need to analyze whether the movant's summary judgment
proof satisfied the traditional summary judgment burden of proof under rule 166a(c). 
Id.

Fraud and Fraudulent Inducement

 In his first issue, Wuertz argues that the trial court improperly granted summary
judgment on his fraud and fraudulent inducement claim. Specifically, Wuertz argues
that he presented evidence that his discussions with the appellees involved only a
one-time premium payment of $300,000 and that there was no discussion of further
payments.

 To recover on an action for fraud, the plaintiff must prove that (1) a material
representation was made; (2) the representation was false; (3) when the speaker made
the representation, he knew it was false or made it recklessly without knowledge of
the truth as a positive assertion; (4) the speaker made it with the intention that it
should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the
party thereby suffered injury. Johnson & Higgins of Tex., Inc. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 524 (Tex. 1998). 

 Fraudulent inducement "is a particular species of fraud that arises only in the
context of a contract and requires the existence of a contract as a part of its proof." 
Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001); Coastal Bank SSB v. Chase Bank
of Texas, N.A., 135 S.W.3d 840, 843 (Tex. App.--Houston [1st Dist.] 2004, no pet.) 

 One of the elements of both claims is that the plaintiff actually and justifiably
relied on the misrepresentation to suffer injury. Ernst & Young, L.L.P. v. Pac. Mut.
Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Restatement (Second) of Torts
§ 537 (1977). In this regard, a party to an arm's length transaction must exercise
ordinary care and reasonable diligence for the protection of his own interests, and a
failure to do so is not excused by mere confidence in the honesty and integrity of the
other party. Thigpen v. Locke, 363 S.W.2d 247, 251 (Tex. 1962); Coastal Bank SSB,
135 S.W.3d at 843. "Therefore, reliance upon an oral representation that is directly
contradicted by the express, unambiguous terms of a written agreement between the
parties is not justified as a matter of law." DRC Parts & Accessories, L.L.C. v. VM
Motori, S.P.A., 112 S.W.3d 854, 858 (Tex. App.--Houston [14th Dist.] 2003, pet.
denied). In DRC Parts, the Fourteenth Court of Appeals stated, 

This principle is also dictated by policy and practical considerations. If
written contracts are to serve a purpose under the law, relative to oral
agreements, it is to provide greater certainty regarding what the terms of
the transaction are and that those terms will be binding, thereby
lessening the potential for error, misfortune, and dispute. 

 

Id. The Fourteenth Court of Appeals further explained that 

a party's exercise of a right under the written contract, which is contrary
to the oral agreement, would subject that party to a fraudulent
inducement claim based on the oral agreement. In that event, however,
the party who entered into the written contract while relying on a
contrary oral agreement would have thereby itself entered into the
written contract with an intent not to perform it. Thus, in order to show
its reliance on the oral agreement to sustain its own fraudulent
inducement claim, that party would necessarily prove that it was guilty
of fraudulent inducement as well.


 The essential issue, then, is not whether that party's evidence of
the contrary oral agreement is admissible or sufficient to prove that
agreement, but instead whether the law will deem such reliance to be
justified and thereby favor that party to the detriment of the other
contracting party, which has at least declared its intent in the contract
and sought to abide by its terms. Because such an approach would
defeat the ability of written contracts to provide certainty and avoid
dispute, the prevailing rule, recited above, is instead that a party who
enters into a written contract while relying on a contrary oral agreement
does so at its peril and is not rewarded with a claim for fraudulent
inducement when the other party seeks to invoke its rights under the
contract. 


Id. at 858-59. 

 The evidence presented shows that the written application, signed by Wuertz,
includes the heading, "Planned Premium," and below it is the term "ANNUAL,"
which includes a checked box with the amount of $200,000 written in the space that
entitled him to $3,512,438.00 in insurance payable at death. Above the ANNUAL
box is a box for "SINGLE PREMIUM," which is unchecked, and nothing is written
in the space provided for an amount. Likewise, the amendment to the policy that
Wuertz signed shows that he increased his annual premium to $300,000 to obtain a
policy for $5,500,000 payable at death.

 In his affidavit, Wuertz stated that he relied on Morey's and Rotthaus's prior
oral representation that he only had to pay $300,000 to receive $5,500,000 in death
benefits. Regardless of his affidavit testimony, Wuertz cannot show justifiable
reliance because the alleged oral representation is directly contradicted by Wuertz's
application, the amendment, and the policy. See DRC Parts & Accessories, 112
S.W.3d at 858; see also In re Media Arts Group, 116 S.W.3d 900, 908 (Tex.
App.--Houston [14th Dist.] 2003, orig. proceeding) (stating that, absent fraud, a
party to a contract may not successfully claim he believed the provisions of a contract
were different from those plainly set out in the contract or he did not understand the
language used). Moreover, the evidence is undisputed that Wuertz did not read the
application at the time he signed it. Nor is there any evidence, other than Wuertz's
affidavit, that Morey and Rotthaus made a material misrepresentation to him upon
which he justifiably relied. Because the parties entered into a written agreement,
Wuertz cannot now complain that he justifiably relied on a prior oral representation
that directly contradicted the terms of the written agreement. (5) See DRC Parts &
Accessories, 112 S.W.3d at 858; see also In re Media Arts Group, 116 S.W.3d at 908. 
Moreover, "a party to a written agreement is charged as a matter of law with
knowledge of its provisions . . . unless he can demonstrate that he was tricked into its
execution." Town North Nat. Bank v. Broaddus, 569 S.W.2d 489, 492 (Tex. 1978)
(quoting Texas Export Dev., 519 S.W.2d at 139). Wuertz has not claimed that he was
tricked into accepting the terms of insurance policy. 

 Wuertz also argues that the "word 'annual' under the term 'planned premium'
in the application is at best ambiguous. It means nothing to a person not familiar with
insurance contracts. Also, there is no evidence when the 'x' was put in the box
marked 'annual.'" However, the term "annual" is not ambiguous at all, as Wuertz
signed the contract application and the mark "x" is in the box next to "annual." 

 Thus, because Wuertz cannot rely on a prior oral agreement to show justifiable
reliance after accepting the terms of the written agreement, we conclude that the trial
court properly granted summary judgment on Wuertz's fraud and fraudulent
inducement causes of action.

 Wuertz relies on Amouri v. Southwest Toyota, Inc. to show that he raised a fact
issue on his claim of fraudulent inducement. See 20 S.W.3d 165 (Tex.
App.--Texarkana 2000, pet. denied). In that case, Amouri went to a car dealership
to purchase a vehicle. Id. at 167. Although Amouri discussed purchasing a vehicle
with the salesman, Amouri ultimately signed a lease agreement for a new car. Id.
After his attempts to void his contract failed, Amouri sued the dealership for fraud. 
Id. The trial court granted summary judgment for the dealership. Id. Amouri
appealed, arguing that a genuine fact issue existed as to his claim that the dealership
fraudulently induced him to sign the lease contract. Id. at 168.

 The court of appeals noted the general rule that a person is held to know what
words were used in the contract, to know their meaning, and to understand their legal
effect. Id. at 169. Consequently, "a party to a contract may not successfully claim
that he believed the provisions of the contract were different from those plainly set
out in the agreement or that he did not understand the meaning of the language used." 
Id. However, the court also noted the exception to the rule, stating that when "the
execution of a contract is procured by fraud, misrepresentation, or concealment, such
that there is no real assent to the agreement, assent may be negated and the binding
nature of the contract avoided." Id. The court of appeals, construing the dealership's
motion as a traditional motion for summary judgment, reversed the summary
judgment because the dealership did not succeed in disproving misrepresentation or
reliance, and it also stated that, if the burden shifted to Amouri to raise a fact issue,
Amouri succeeded by presenting evidence that the dealership had discussed with him
the "form of payment he would use in purchasing the vehicle and at no time prior to
signing the agreement did Southwest discuss his leasing the vehicle." Id. at 171.

 We decline to apply Amouri to the facts of this case because the exception set
out in Amouri applies only when the execution of a contract is procured by fraud,
misrepresentation or concealment, "such that there is no real assent to the agreement." 
Id. at 169. To prove fraudulent inducement that voids a contract, a party is required
to show that the defendant "made a material misrepresentation, which was false, and
which was either known to be false when made or was asserted without knowledge
of its truth which was intended to be acted upon which was relied upon and which
caused injury." Id. at 170. There is no evidence in this case, other than Wuertz's
affidavit, that Morey and Rotthaus made a material misstatement of fact to him
intending that he act on it and upon which he did justifiably rely. The testimonial
evidence of an interested witness is not competent summary judgment evidence
unless it is "clear, positive and direct, otherwise credible and free from contradictions
and inconsistencies, and could have been readily controverted." Tex. R. Civ. P.
166a(c); see Trico Technologies Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997). 
Wuertz's affidavit is not competent summary judgment evidence of fraudulent
inducement. 

 We overrule Wuertz's first issue.

DTPA

 In his second issue, Wuertz argues that the trial court erred in granting
summary judgment on his DTPA cause of action. Wuertz's appellate brief argues that
"[t]he facts related above in the deposition of Appellant, Wuertz and Appellee,
Rotthaus, together with the affidavit of Appellant, Wuertz, demonstrate violation of
the above statutes."

 Wuertz has wholly failed to brief this issue on either the law or the law's
relation to the facts of this case. See Tex. R. App. P. 38.1(h) ("The brief must contain
a clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record."). "Although appellate courts generally construe the
briefing rules liberally, points of error or issues unsupported by the citation of
authority present nothing for the court to review." Harris County Mun. Util. Dist. No.
48 v. Mitchell, 915 S.W.2d 859, 866 (Tex. App.--Houston [1st Dist.] 1995, no writ). 
Accordingly, we hold that Wuertz waived his second issue concerning his recovery
under the DTPA.

 We overrule Wuertz's second issue.

Conclusion

 We affirm the judgment of the trial court. 






 Evelyn V. Keyes

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.

1. See Tex. Bus. & Com. Code Ann. § 17.46 (Vernon Supp. 2008).
2. See Tex. Ins. Code Ann. § 541.052(a) (Vernon Supp. 2008) (entitled, "False
Information and Advertising").
3. See Tex. Bus. & Com. Code Ann. § 17.46(a)(4), (5), (12) (Vernon Supp. 2008)
(entitled, "Deceptive Trade Practices Unlawful").
4. Wuertz appeals only the summary judgment order on fraud and fraudulent inducement
and violations of the DTPA. Wuertz does not appeal the trial court's order as it
relates to negligent misrepresentation and violations of the insurance code.
5. Even if Wuertz could show justifiable reliance, the appellees also asserted that Wuertz
had no evidence that Rotthaus's alleged representation about the policy's premium
were made with the intention that Wuertz would act upon it. On appeal, Wuertz does
not argue or cite to any evidence showing that Rotthaus intended for Wuertz to act on
the alleged representation. Thus, we would necessarily have to overrule Wuertz's
issue because he has not presented any evidence that Rotthaus made a representation
with the intention that Wuertz act upon it.