Opinion issued October 27, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00815-CV

———————————

Ron Carter, Inc., Ron-Carter Ford, Inc., and Wilson-Hall Imports,
Inc., Appellants

V.

Robert Kane, Appellee



 



 

On Appeal from the 412th District Court

Brazoria County, Texas



Trial Court Case No. 56412

 



 

MEMORANDUM OPINION

Ron Carter, Inc.,
Ron-Carter Ford, Inc., and Wilson-Hall Imports, Inc. (collectively
“Ron-Carter”) appeal the grant of summary judgment in favor of Robert Kane in a
lawsuit arising out of a joint promotional contest offered by Ron-Carter and a
company that Kane reportedly represented, Carlisle Homes.  Ron-Carter contends that the trial court
erred in granting Kane’s motion for summary judgment on Ron-Carter’s fraudulent
inducement claim against Kane.  We
reverse the trial court’s grant of summary judgment for Kane and remand for
further proceedings consistent with this opinion.

Background

          In
early 2007, Carl Mitchell, a representative of the auto dealership, Ron-Carter,
approached his longtime friend Robert Kane, who purportedly was a
representative of homebuilder Carlisle Homes, to gauge Carlisle Homes’ interest
in participating in a promotional contest with Ron-Carter.  Kane at the time was employed by a local bank
that had a financial relationship with Carlisle Homes.  Representatives from Carlisle Homes were
interested; Perry Thomas, the president of Carlisle Homes, and Kane both sent
e-mails to Mitchell expressing excitement and gratitude for Ron-Carter’s
consideration of Carlisle Homes for the contest.  Mitchell, Kane, Thomas, other representatives
of Ron-Carter and Carlisle Homes, and counsel representing Ron-Carter and
Carlisle Homes then had two meetings in March 2007 to discuss and negotiate the
joint promotional contest.  In the
contest, people visiting Ron-Carter to look at cars could enter into a drawing
(which Ron-Carter would promote), and the winner of the drawing would receive a
home constructed by Carlisle Homes.  

In response to Kane’s
motion for summary judgment, Mitchell signed an affidavit stating that before
signing the agreement, Kane told Mitchell that Carlisle Homes would be able to
perform under the agreement and that Kane was a 25% owner of and had personally
invested $250,000 in Carlisle Homes. 
However, Ron-Carter has also presented evidence that Kane was only a 25%
owner of a subsidiary company of Carlisle Homes and had never invested $250,000
in the company.  In April 2007, Ron-Carter
and Carlisle Homes entered into a written agreement to hold the contest.

          Carlisle
Homes completed construction of the house, and Ron-Carter promoted and
conducted the drawing for the contest. 
Carlisle Homes was scheduled to transfer title of the house to the
contest winner, but Ron-Carter then learned the house was subject to a deed of
trust of approximately $188,000 and various mechanics’ and materialmen’s liens
of at least $6,400.  Carlisle Homes later
informed Ron-Carter that it did not have the money to pay off the deed of trust
and other liens and therefore could not transfer title to the contest
winner.  Ron-Carter and the contest
winner filed suit against Carlisle Homes for breach of contract and obtained a default
judgment for $250,000.[1]

          Ron-Carter
filed suit against Kane alleging fraudulent inducement and statutory fraud,
eventually dropping the statutory fraud claim. 
Kane promulgated interrogatories asking, inter alia, for Ron-Carter to
state “exactly” the representations made by Kane as described in Ron-Carter’s
original petition.  Ron-Carter responded
by describing the “exact statements” as contained in e-mails between Ron-Carter
representatives and Kane, which Ron-Carter attached.

Kane moved for summary
judgment on the fraudulent inducement claim on one of two alternative grounds:
(1) Kane did not make any misrepresentation and (2) Ron-Carter could not, as a
matter of law, have reasonably and justifiably relied on any representation
made during the “adversarial” contract negotiation process.  Ron-Carter filed an amendment to its responses
to Kane’s interrogatories, which stated that during the March 2007 meetings
Kane represented to Mitchell, inter alia, that Carlisle Homes would be able to
perform under the agreement and that Kane was a 25% owner of and had personally
invested $250,000 in Carlisle Homes. 
Ron-Carter also pointed to deposition testimony that Kane was only a 25%
owner of a subsidiary company of Carlisle Homes and that Kane never personally
invested $250,000 in the company.  On the
same day they served amended responses to interrogatories, Ron-Carter also
filed an affidavit from Mitchell in which Mitchell described the same
representations by Kane as the amended responses to interrogatories described. 

Kane moved to strike
Ron-Carter’s amended responses to interrogatories and to strike the Mitchell
affidavit, arguing that it and the amended responses to interrogatories had
been filed to create a fact issue to avoid summary judgment.  The trial court denied Kane’s motion to
strike but granted Kane’s motion for summary judgment.  The trial court did not state the grounds on
which it granted summary judgment.  Kane does
appeal the denial of his motion to strike the amended responses to
interrogatories and the Mitchell affidavit. 

Ron-Carter now appeals
the grant of summary judgment, raising two issues: (1) there is a genuine issue
of material fact regarding whether Kane made false representations to
Ron-Carter, and (2) there is a genuine issue of material fact regarding whether
Ron-Carter reasonably relied upon Kane’s false representations. 

Standard
of Review

          We review de
novo the trial court’s grant of summary judgment.  Hahn v.
Love, 321 S.W.3d 517, 523 (Tex. App.—Houston [1st Dist.] 2009, pet.
denied).  Traditional summary judgment is
properly granted only when the movant establishes that there are no genuine
issues of material fact and that he is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Hahn, 321
S.W.3d at 523.  Summary judgment is
proper on claims for which the movant is the defendant only when the movant
negates at least one element of each of the plaintiff’s causes of action or
when the movant conclusively establishes each element of an affirmative
defense.  Hahn, 321 S.W.3d at 523.  If
the movant conclusively negates an element of each of the plaintiff’s causes of
action or conclusively establishes its own cause of action, the burden then
shifts to the non-movant to respond with evidence raising a genuine issue of
material fact that would preclude summary judgment.  Id.  In deciding whether there is a disputed
material fact precluding summary judgment, evidence favorable to the non-movant
will be taken as true, every reasonable inference must be indulged in favor of
the non-movant, and any doubts must be resolved in favor of the non-movant.  Id.

As in this case, when
a trial court order does not state the grounds on which it granted summary
judgment, we may reverse summary judgment only if the nonmovant on appeal shows
that each of the grounds in the movant’s summary judgment motion is
insufficient to support summary judgment.  See Fed.
Deposit Ins. Corp. v. Attayi, 745 S.W.2d 939, 942 (Tex. App.—Houston [1st
Dist.] 1988, no writ).  Conversely, we
may affirm summary judgment only based on grounds presented specifically in
movant’s motion for summary judgment.  See State Farm Lloyds v. Page, 315
S.W.3d 525, 532 (Tex. 2010).

Fraudulent
Inducement

Fraudulent inducement
is a particular species of fraud in which the elements of fraud must be
established as they relate to an agreement between the parties.  See
Coastal Bank SSB v. Chase Bank of Texas, N.A., 135 S.W.3d 840, 843 (Tex.
App.—Houston [1st Dist.] 2004, no pet.). 
The elements of fraud are: (1) a material misrepresentation was made;
(2) it was false; (3) when the representation was made, the speaker knew it was
false or the statement was recklessly asserted without any knowledge of its
truth; (4) the speaker made the false representation with the intent that it be
acted on by the other party; (5) the other party acted in reliance on the
misrepresentation; and (6) the party suffered injury as a result.  See
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990).  Reliance on a party’s misrepresentation must be
justifiable and reasonable.  See Atl. Lloyds Ins. Co. v. Butler, 137 S.W.3d 199, 226 (Tex. App.—Houston
[1st Dist.] 2004, pet. denied) (citing Restatement
(Second) of Torts § 531 (1977)). 

A.              
Misrepresentation

Ron-Carter’s first
issue is that that the trial court erred in granting summary judgment on the
ground that there is no genuine issue of material fact as to whether Kane made
a false statement.  Ron-Carter alleges
Kane made two false statements to Ron-Carter: (1) that Carlisle Homes was able
to perform on the agreement, and (2)
that Kane was a 25% owner of and had personally invested $250,000 in Carlisle
Homes.  Because we hold there is a
genuine issue of material fact regarding this second alleged false statement,
we sustain Ron-Carter’s first issue.

          Ron-Carter
contends that (1) Mitchell’s affidavit in which Mitchell said that Kane told
him he was a 25% owner of Carlisle Homes and that he had personally invested
$250,000 in the company, and (2) deposition testimony stating that Kane was
only a 25% owner of a subsidiary of Carlisle Homes and that Kane never invested
$250,000 of his personal funds in the company, create a genuine issue of
material fact about whether Kane made a misrepresentation to Mitchell about
Kane’s ownership stake and investment in Carlisle Homes.  Kane does not specifically dispute that this
evidence would create a genuine issue of material fact but argues that the Mitchell
affidavit should be disregarded under the sham affidavit doctrine. 

In reviewing a summary
judgment motion, we must take all of this evidence favorable to Ron-Carter as
true.  Hahn, 321 S.W.3d at 523.  However, under the sham affidavit doctrine, a
party cannot file an affidavit to contradict his own deposition testimony
without any explanation for the change in testimony.  Farroux
v. Denny’s Rests., Inc., 962
S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (adopting sham
affidavit doctrine from Bank of Ill. v.
Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168–69 (7th Cir.
1996)).  The basic rationale behind the
sham affidavit doctrine is that the whole purpose of summary judgment—to weed
out unfounded claims, specious denials, and sham defenses—would be undercut if
a party could fabricate a sham issue of fact and mechanically defeat summary judgment
simply by filing another affidavit, even if that affidavit contradicted
previous deposition testimony.  See Bank of Ill., 75 F.3d at 1168–69.  Unless a party explains why he has filed an
affidavit that contradicts his previous deposition (for example, because he was
confused or has discovered additional materials), we will assume that the party
has filed the affidavit solely to defeat summary judgment and will therefore
disregard the affidavit.  Farroux, 962 S.W.2d at 111.

Kane argues that the
Mitchell affidavit contradicts Ron-Carter’s initial response to Kane’s
interrogatories, in which Ron-Carter described the “exact statements” of Kane’s
representations as contained in several e-mails from Kane, which say nothing
about any ownership stake or personal investment by Kane in Carlisle
Homes.  However, Ron-Carter amended its
responses to interrogatories to include Mitchell’s statement that Kane had repeated
that he was a 25% owner of Carlisle Homes and had personally invested $250,000
in the company.  On the same day,
Ron-Carter filed the Mitchell affidavit. 
Therefore, there was no contradiction between the responses to
interrogatories and the affidavit.

          Kane
argued to the trial court, and argues here that Ron-Carter was simply amending
its responses to interrogatories to create a fact issue to avoid summary
judgment.  The trial judge, however, explicitly
denied Kane’s motion to strike, and Kane has not appealed the denial of his
motion.  Therefore, the responses to
interrogatories at the time of the summary judgment are the amended responses,
which the Mitchell affidavit does not contradict.  See
State Farm Fire & Cas. Co. v. Morua,
979 S.W.2d 616, 618–19 (Tex. 1998) (stating that party should be able to
rely on opponent’s supplemental interrogatory answers to develop case before
and at trial).  We can and should affirm
summary judgment on any grounds properly stated in a motion for summary
judgment, see State Farm Lloyds, 315
S.W.3d at 532, but we cannot affirm summary judgment by overruling the denial
of a motion to strike when no one has appealed that denial and therefore it is
not before us for review.  See Tex.
R. App. P. 47.1; Tex. Integrated
Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348,
373 (Tex. App.—Dallas 2009, pet. denied) (refusing on appeal to disregard affidavit
because motion at trial to disregard affidavit under sham affidavit doctrine
was denied and not appealed).

Since the Mitchell
affidavit presents no contradiction with the amended responses to interrogatories
and therefore cannot be disregarded under the sham affidavit doctrine, we hold
that Ron-Carter presented evidence to establish a genuine issue of material
fact as to whether Kane made a misrepresentation to Mitchell about his
ownership interest and personal investment in Carlisle Homes.  Therefore, summary judgment was inappropriate
on the ground that Kane did not make a misrepresentation.  We sustain Ron-Carter’s first issue.

B.              
Justifiable
Reliance on the Misrepresentation

Ron-Carter cannot
prevail by simply establishing a genuine issue of material fact as to whether Kane
made a misrepresentation; it must also demonstrate that the trial court erred
in granting summary judgment on the ground that there is no genuine issue of
material fact regarding whether Ron-Carter justifiably relied on Kane’s false
representations.  Because we hold there
is a genuine issue of material fact as to whether Ron-Carter justifiably relied
on Kane’s false representations, we sustain Ron-Carter’s second issue.

          Fraudulent inducement
requires a showing that the plaintiff reasonably and justifiably relied on the defendant’s
misrepresentation.  DeSantis, 793 S.W.2d at 688; Butler, 137 S.W.3d at 226.  Generally, reliance on representations made
in a business or commercial transaction is not justified when the
representation takes place in an adversarial context or relationship.  Coastal
Bank SSB, 135 S.W.3d at 843
(citing McCamish, Martin, Brown &
Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 794 (Tex. 1999)).  In McCamish,
the Texas Supreme Court articulated the test for determining if a relationship
is adversarial:

In determining
whether [the] justifiable reliance element is met, one must consider the nature
of the relationship between the [parties] . . . . Because not every situation
is clearly defined as “adversarial” or “nonadversarial,” the characterization
of the inter-party relationship should be guided, at least in part, by “the
extent to which the interests of the [parties] are consistent with each other.”


 991 S.W.2d at 794
(citing Jay M. Feinman, Attorney
Liability to Nonclients, 31 Tort & Ins. L.J. 735, 750 (1996)).

This test originated in a case alleging
negligent misrepresentation by an attorney to a third party, McCamish, 991 S.W.2d at 794, which, like
fraudulent inducement, requires a showing of  justifiable reliance.  See
Grant Thornton LLP v. Prospect High Income Fund, 314 S.W.3d 913, 923 (Tex.
2010).  The basic rationale for the McCamish test is that an attorney, hired
by a client for the benefit and protection of the client’s interests, must
pursue those interests with undivided loyalty (within the confines of the Texas
Disciplinary Rules of Professional Conduct), without the imposition of a
conflicting duty to a nonclient whose interests are adverse to the client.  Id.  Even though its origins are in litigation,
the McCamish test may apply in
non-litigation contexts such as “adversarial” business or commercial
transactions.  Id. 

Kane cites to several
cases for the proposition that all business relationships are adversarial in
nature, but these cases are distinguishable.[2]  More importantly, the McCamish test for determining if a relationship is adversarial (and
therefore reliance is not reasonable) is not categorical, but
fact-specific.  For example, in a case
applying the McCamish test, this Court
held that a relationship of two sophisticated parties who were both represented
by counsel is not, standing alone, dispositive of the issue of whether reliance
is reasonable, but only a factor to be considered.  See
Coastal Bank SSB, 135 S.W.3d at
843.  Otherwise, any two people who are
sophisticated and have hired lawyers could knowingly make misrepresentations in
business transactions, however friendly or cooperative their joint venture
might appear, without ever being held accountable for their fraud. 

Ron-Carter points to McMahan v. Greenwood, 108 S.W.3d 467
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) as a case more strongly
on-point with this case.  In McMahan, the plaintiff and a business
partner established a business selling and refurbishing classic cars.  Id. at
476.  In creating the business, the
parties signed a stock option agreement drafted by the defendant, an attorney.  Id.  Contemporaneously (the plaintiff later
alleged), the defendant told the plaintiff that the plaintiff was a shareholder
in the business.  Id.  The relationship between
the plaintiff and his business partner eventually soured, and the parties
signed a settlement agreement to wind down the business.  Id. at 477. 
A few years later, the plaintiff asked the former business partner for
documents to allow him to take tax credits on losses in their business, but the
former business partner claimed the plaintiff had never owned stock in their
business and therefore was not entitled to the necessary tax documents to claim
the tax credits.  Id.  The plaintiff sued the
defendant for fraudulent inducement.  Id. at 494–95.  The defendant moved for summary judgment,
claiming that the plaintiff could not have justifiably relied on any statements
the defendant made about the plaintiff’s stock ownership because those
statements would have been made in an adversarial context of negotiating,
drafting, and executing the settlement agreement.  Id.
at 497.

The McMahan court held that while statements
made during the settlement negotiations were likely made in an adversarial
context, the statements made during the formation and operation of the business
likely were not.  Id. at 497.  Applying the
test of McCamish, the court noted
that the plaintiff and his business partner were ostensibly working towards the
same goal of a successful business venture.  Id.  Whether their relationship was adversarial
was not established as a matter of law but would be a fact question; therefore
summary judgment was inappropriate as to whether the plaintiff justifiably
relied on the defendant’s statements.  Id.

McMahan
is on-point to this case.  Like McMahan, Ron-Carter and Carlisle Homes
were working towards the same goal of a successful business venture in which
Carlisle Homes contributed a house in exchange for the promotional benefits of
being associated with Ron-Carter’s auto dealership.  The McCamish
test requires us to consider the nature of the relationship between the
parties and the extent to which their interests were consistent.  Aside
from the fact that the parties had lawyers (like McMahan) and were sophisticated businessmen, Kane points to no
evidence suggesting that the interests of the parties were not aligned or
inconsistent.  In contrast, Ron-Carter points
to several e-mails in which the parties expressed gratitude and excitement that
they were working with each other, as well as the fact that Kane and Mitchell
were long-time personal friends.  We hold
that it is a fact question as to whether the relationship between the parties
was adversarial and summary judgment was inappropriate on the ground that
Ron-Carter could not have reasonably relied on Kane’s statements.[3]  We therefore sustain Ron-Carter’s second
issue. 

Conclusion

Ron-Carter has
established that there is a genuine issue of material fact as to (1) whether
Kane made a false representation and (2) whether Ron-Carter justifiably relied
on Kane’s false representation.  These
were the only grounds raised by Kane in his motion for summary judgment.  Therefore Ron-Carter has satisfied its burden
to defeat summary judgment and require reversal.  See Hahn,
321 S.W.3d at 523; Attayi, 745 S.W.2d at 942.

Accordingly,
we reverse the grant of summary judgment for appellee Robert Kane and remand
for proceedings consistent with this opinion.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel consists of Justices Jennings, Sharp and
Brown.

 

 

 

 











[1]           Carlisle
Homes has since ceased operations. 
Franklin Bank, the holder of the deed of trust, eventually foreclosed on
the house in question.  Franklin Bank
later went into receivership and the FDIC now controls the property.





[2]           See McCamish,
Martin, Brown & Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 794 (Tex. 1999) (involving representations made by attorney in
litigation context); Spethmann v. Anderson, 171 S.W.3d 680, 690 (Tex. App.—Dallas 2005,
no pet.) (concluding that there was no evidence that parties were adversaries
in merger; noting that at time of misrepresentation, the two companies
had worked as partners on projects for
over a year, and their corporate offices and functions had been combined for
over eight months); Coastal
Bank SSB v. Chase Bank of Texas, N.A., 135 S.W.3d 840, 843 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (concluding party could not prove it
justifiably relied on other party’s representation or silence when the two
parties’ contract contained express waiver of reliance); Swank v. Sverdkin, 121 S.W.3d 785, 803 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied) (holding trial court did not err in disregarding jury’s
finding of negligent misrepresentation because representations, which were made
in context of contract negotiations, conflicted with contract; “The fact that
Sverdlin failed to read the contracts and simply chose to sign them does not
amount to a ground of recovery for negligent misrepresentation.”).

 

 





[3]           Kane
also argues that Ron-Carter’s admitted failure to exercise reasonable diligence
and investigate the truthfulness of Kane’s representations negates the element
of reasonable reliance on Kane’s statements. 
However, we have only articulated the rule that a party cannot
reasonably rely on a representation when that representation “with reasonable
diligence, could easily have been refuted.”  Butler,
137 S.W.3d at 226 (emphasis added).  Kane
has not identified any evidence that, had Ron-Carter been more diligent and
investigated Kane’s statements, Ron-Carter would have discovered they were
false.  Since Kane has the burden to
produce such evidence to negate the element of reasonable reliance on a motion
for summary judgment, Hahn, 321
S.W.3d at 523, we cannot affirm summary judgment on this ground.